IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JUAN AREVALO, et al.,

     Plaintiffs,

  v.

BANK OF AMERICA CORP.,

     Defendant.

NO. C10-4959 TEH

ORDER RE: MOTION TO DISMISS

This matter came before the Court on March 7, 2011, on the motion to dismiss and/or strike filed by Defendant Bank of America Corporation ("Bank of America"). For the reasons set forth below, Defendant's motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

Plaintiffs Juan Arevalo ("Arevalo") and Mitchell Sandow ("Sandow") hold credit cards bearing Bank of America's logo.[1] In April and August 2010, respectively, Arevalo and Sandow discovered charges for "Credit Protection Plus" ("CPP") on their credit card statements. CPP is a program available to credit card holders that charges them roughly 1 percent of their credit card balance in exchange for allowing them, under certain circumstances, to defer their monthly minimum credit card payment obligations. Arevalo discussed CPP with a Bank of America salesperson in January 2010, and declined to enroll at that time. When he discovered CPP charges on his April 2010 credit card statement, he reviewed previous statements and found CPP charges in February and March 2010. Bank of

---

[1] On a motion to dismiss, the Court must accept as true all material factual allegations in the complaint, as well as any reasonable inferences to be drawn from them. *Ashcroft v. Iqbal*, -- U.S. ----, 129 S. Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009); *Broam v. Brogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

United States District Court
For the Northern District of California

America allowed Arevalo to cancel CPP, but it refused to credit him the $712.50 he had paid for three months of CPP. Sandow had a similar experience. He discovered CPP charges on his credit card, and after calling Bank of America's customer service line, he filed a complaint with the Office of the Comptroller of Currency ("OCC"). Bank of America responded to Sandow by letter, informing him that Bank of America's records show that Sandow enrolled in CPP on January 6, 2009, "during an inbound telephone call in which a fraud status was removed from [his credit card] account." First Amended Class Action Complaint ("FAC") ¶ 48, ECF No. 6. The letter stated that during the call Sandow had provided his city of birth as "Falanagan," and informed Sandow that Bank of America had mailed him information about CPP within three days of his enrollment. Sandow's city of birth is not "Falanagan," and he does not recall receiving CPP materials in the mail. Bank of America has stopped charging Sandow for CPP, but refused to refund the more than $700 he paid in CPP charges.

Plaintiffs bring claims on behalf of all California residents who paid for CPP during the relevant time period who either (a) were involuntarily enrolled in CPP, or (b) enrolled in CPP voluntarily but were unable to use CPP due to the program's exclusions. Plaintiffs allege that members of the latter group were persuaded to enroll in CPP because Bank of America advertised the program as a way to make their futures more secure – it called CPP "an important safety net" "when times get tough, or when you go through a major life event." *Id.* at ¶ 15. Bank of America also allegedly referred to CPP as coverage that protects consumers "precisely during the times you need it most," giving them "peace of mind protection for the unexpected. *Id.* at ¶ 30. Plaintiffs point out exemptions and exclusions contained in CPP's fine print, which they say consumers typically receive, if at all, after enrolling in CPP. They also contend that Bank of America makes no effort to determine if a CPP customer is eligible for CPP when it sells the product. For example, retired persons are excluded from some CPP benefits, but Bank of America allegedly does not ask CPP customers when they sign up for CPP whether they are retired. Plaintiffs make similar

1   allegations as to persons who are self employed or collecting unemployment insurance, part-

2   time seasonal workers, and some disabled persons.

3       Plaintiffs filed their FAC against Bank of America in this Court on December 6, 2010.

4   Defendant Bank of America filed its motion to dismiss on January 25, 2011, and this motion

5   is now before the Court.

6

7   **LEGAL STANDARD**

8       Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a

9   plaintiff's allegations fail "to state a claim upon which relief can be granted." In ruling on a

10  motion to dismiss, the Court must "accept all material allegations of fact as true and construe

11  the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. County*,

12  487 F.3d 1246, 1249 (9th Cir. 2007). Courts are not, however, "bound to accept as true a

13  legal conclusion couched as a factual allegation." *Iqbal*, 129 S. Ct. at 1949-50.

14      A Rule 12(b)(6) dismissal "can be based on the lack of a cognizable legal theory or

15  the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica*

16  *Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, a plaintiff

17  must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*

18  *Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plausibility

19  does not equate to probability, but it requires "more than a sheer possibility that a defendant

20  has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. "A claim has facial plausibility when the

21  plaintiff pleads factual content that allows the court to draw the reasonable inference that the

22  defendant is liable for the misconduct alleged." *Id.* Dismissal of claims that fail to meet this

23  standard should be with leave to amend unless it is clear that amendment could not possibly

24  cure the complaint's deficiencies. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th

25  Cir. 1998).

26

27

28

1 **DISCUSSION**

2      Bank of America asks the Court to dismiss the following claims: (1) breach of

3 contract (first claim); (2) breach of the covenant of good faith and fair dealing (second

4 claim); (3) intentional misrepresentation (third claim); (4) violation of the Consumer Legal

5 Remedies Act, California Civil Code section 1750, *et seq.* (fourth claim); (5) violation of the

6 California Business and Professions Code section 17200, *et seq.* (fifth claim); (6) false

7 advertising under the California Business and Professions Code section 17500, *et seq.* (sixth

8 claim); and (7) unjust enrichment (seventh claim). Bank of America argues that Plaintiffs

9 lack standing, that Plaintiffs have sued the wrong entity, that certain claims are preempted,

10 and that Plaintiffs have not adequately pleaded their substantive claims.

11

12 **I. Standing**

13      The two named Plaintiffs bring claims on behalf of a putative class of all California

14 residents who paid for CPP during the relevant time period who either (1) were enrolled

15 involuntarily in CPP, or (2) signed up for CPP but were unable to use CPP due to exclusions.

16 In its motion to dismiss, Bank of America argues that because the named Plaintiffs admit that

17 they do not fall into the latter category of class members – they did not sign up for CPP and

18 never attempted to use it – Plaintiffs fail to state various claims resting upon allegations

19 relating to that group. In its reply papers, Bank of America identified this as a constitutional

20 standing challenge and cited authority in support of its arguments. Because constitutional

21 standing is a jurisdictional question that can be raised at any time in the litigation and cannot

22 be waived, *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011), the

23 Court will consider Bank of America's standing arguments. At oral argument, Plaintiffs

24 declined the opportunity to address these arguments in writing.

25      Constitutional standing requires a plaintiff to demonstrate an actual, personal injury in

26 fact that is fairly traceable to the challenged actions of the defendant and likely be redressed

27 by a decision in the plaintiff's favor. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61,

28 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Standing "is the threshold question in every federal

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490,

2    498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). In class actions, questions of standing do not

3    generally defer until the class certification stage. *LaDuke v. Nelson*, 762 F.2d 1318, 1325 (9th

4    Cir.1985) ("Standing . . . is a jurisdictional element that must be satisfied prior to class

5    certification."). Named plaintiffs in a class action "must allege and show that they personally

6    have been injured, not that injury has been suffered by other, unidentified members of the

7    class to which they belong and which they purport to represent." *Warth*, 422 U.S. at 502.

8    Bank of America's standing challenge raises the question of "whether intra-class differences

9    implicate standing or the class certification requirements of Rule 23(a)." *Brazil v. Dell Inc.*,

10   No. C07-01700 RMW, 2008 WL 4912050, at *5 (N.D. Cal. Nov. 14, 2008). The Supreme

11   Court has acknowledged "tension in our prior cases in this regard." *Gratz v. Bollinger*, 539

12   U.S. 244, 264 n.15, 123 S.Ct. 2411, 156 L.Ed.2d 257 (2003). Courts have resolved this

13   tension differently. *Compare Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d

14   534 (1982) (finding that class representatives, who had standing to challenge their transfer to

15   lower levels of medical care under Medicaid, lacked standing to challenge class members'

16   transfers to higher levels of care), *and In re Wells Fargo Mortg.-Backed Certificates Litig.*,

17   712 F. Supp. 2d 958, 965 (N.D. Cal. 2010) (holding that named plaintiffs, who had standing

18   to sue based on misstatements or omissions in securities offerings through which they

19   actually purchased securities, did not have standing to sue based on similar allegations

20   relating to offerings through which they did not purchase securities), *and Shurkin v. Golden

21   State Vintners, Inc.*, 471 F. Supp. 2d 998, 1022 (N.D. Cal. 2006) (holding that class

22   representatives, investors who did not own shares for the entire period of alleged

23   wrongdoing, only had standing to pursue claims arising from conduct that took place while

24   they owned the shares), *with Gen. Tel. Co. Of Sw. v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364,

25   72 L.Ed.2d 740 (1982) (analyzing on adequacy grounds, not standing grounds, whether a

26   Mexican-American plaintiff alleging he was denied a promotion based on race could

27   maintain a class action on behalf of all Mexican-American job applicants, and finding that he

28   could not), *and Brazil*, 2008 WL 4912050, at *5 (holding that named plaintiffs who alleged

injuries relating to the purchase of two computer models had standing to assert claims on behalf of class members who purchased computers across the product line and alleged different kinds of harms), *and In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1004 (N.D. Cal. 2008) (holding that class representatives, investors who did not own shares for the entire period of alleged wrongdoing, had standing to pursue claims arising from conduct that took place before they owned the shares), *and In re Verisign, Inc.*, No. C 02-02270 JW, 2005 WL 88969, at *4 (N.D. Cal. Jan. 13, 2005) (finding that named plaintiffs, investors alleging that defendants inflated earnings on several occasions, causing plaintiffs to buy stock at inflated prices, had standing to sue based on conduct that took place after they had purchased stock). While the Court believes that in most cases, Rule 23(a) is the best means of determining whether class representatives can properly bring claims on behalf of absent class members, Plaintiffs fail to persuade the Court that they have standing to bring such claims here.

The party asserting federal jurisdiction carries the burden of establishing standing under Article III. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006). Plaintiffs make two arguments as to why Arevalo and Sandow have standing to prosecute a class action involving claims they could not advance individually. First, they argue that the standing of absent class members is not properly before this Court. While that may be true, whether absent class members themselves have standing is irrelevant. The issue here is whether class representatives have standing to assert claims on behalf of absent class members.

Second, Plaintiffs argue that CPP is a single "omnibus scheme," and therefore class representatives should be able to bring all claims relating to it. They link claims arising from voluntary and involuntary CPP enrollment by noting that Bank of America responded to Arevalo and Sandow's complaints about being involuntarily enrolled in CPP by stating that they had voluntarily signed up for the program. This argument is unpersuasive. The Court's standing analysis depends upon the facts that Plaintiffs allege, and Plaintiffs allege that Bank of America enrolled Arevalo and Sandow in CPP without their knowledge or consent. When

1    Arevalo and Sandow learned of these charges, Bank of America refused to refund more than

2    $700 charged to each of their credit cards. The fact that Bank of America allegedly stated

3    that Arevalo and Sandow voluntarily enrolled in CPP does not change Plaintiffs' allegations,

4    or relate Arevalo and Sandow's claims to those arising from class members' voluntary

5    enrollment in CPP. At oral argument, Plaintiffs argued that putative class members share an

6    injury – they paid for a valueless product that they did not want or could not avail themselves

7    of. But Arevalo and Sandow make no allegation that they suffered an injury stemming from

8    the product's worth. Their claim is that they got something they did not want and never tried

9    to use. The value of the product, what Bank of America allegedly said to get them to buy it,

10   any disclosures made about the product – facts essential to claims stemming from class

11   members who voluntarily enrolled in CPP – appear to be unrelated to the claims of Arevalo

12   and Sandow.

13       The Court agrees with Plaintiffs that when class representatives establish standing

14   under Article III, the requirements of Rule 23(a) are ordinarily the best means of "effectively

15   limit[ing] the class claims to those fairly encompassed by the named plaintiff's claims."

16   *General Telephone Co.*, 457 U.S. at 156. "Representative parties who have a direct and

17   substantial interest have standing; the question whether they may be allowed to present

18   claims on behalf of others who have similar, but not identical, interests depends not on

19   standing, but on an assessment of typicality and adequacy of representation." *Greenwood v.*

20   *CompuCredit Corp.*, No. 08-04878 CW, 2010 WL 4807095, at *3 (N.D. Cal. Nov. 19, 2010)

21   (quoting 7AA Wright et al., *Federal Practice and Procedure* (3d 2005) § 1758.1). Had

22   Plaintiffs articulated similarities between the class representatives and purchasers of CPP,

23   this Court would be inclined to defer questions of relatedness to the class certification stage.

24   However, the mere fact that all class members paid for CPP, without more, does not indicate

25   that they were the victims of an "omnibus scheme."

26       The cases Plaintiffs cited at oral argument do not alter the Court's view. Plaintiffs

27   cited *Bates v. United Parcel Service, Inc.*, a Ninth Circuit case which states that "[i]n a class

28   action, standing is satisfied if at least one named plaintiff meets the [Article III]

7

United States District Court

For the Northern District of California

requirements." 511 F.3d 974, 985 (9th Cir. 2007). While this statement would seem to contradict the Court's holding in this case, it should not be read so broadly. Intra-class differences were not at issue in *Bates* – there defendants argued that class representatives did not have standing at all. Furthermore, when taken at face value, the statement in *Bates* would contradict the Supreme Court's holding in *Blum*, which found that class representatives who satisfied standing requirements in their own right did not have standing to bring claims on behalf of some members of the class. *Blum*, 457 U.S. at 1000-01. The *Bates* panel likely intended to reiterate the rule of the case it cited, *Armstrong v. Davis*, which held that "[i]n order to assert claims on behalf of a class, a named plaintiff must have personally sustained or be in immediate danger of sustaining some direct injury as a result of the challenged statute or official conduct." *Armstrong*, 275 F.3d 849, 860 (9th Cir. 2001) (quotation omitted). This rule does not explain how a Court should approach a standing challenge based upon intra-class differences.

Other cases cited by Plaintiffs do not affect the Court's analysis. *Greenwood* is inapposite; the issue there was whether absent class members had standing, not whether class representatives had standing to assert claims on behalf of absent class members. 2010 WL 4807095, at *2-*3. The fact that other courts have ruled on class certification without addressing standing does not provide this Court with guidance for analyzing standing in a class action. *See, e.g.*, *Negrete v. Allianz Life Ins. Co. of North Amer.*, 238 F.R.D. 482 (C.D. Cal. 2006). Nor does *Spinelli v. Capital One Bank*, another class action challenging CPP, undermine the Court's reasoning. *Spinelli*, No. 8:08-cv-132-T-33 EAJ, 2009 WL 700705 (M.D. Fla. 2009). In *Spinelli*, a district court held that class representatives had standing to pursue class claims challenging CPP. There, however, the class representatives had affirmatively signed up for CPP, and the court was not presented with the question of whether involuntarily enrolled CPP members could represent a class of people who bought CPP. Finally, Plaintiffs cite *Brazil*, a district court decision holding that two named plaintiffs in a class action alleging claims arising from the purchase of two models of Dell computers had standing to bring claims relating to a range of computer models and marketing practices.

United States District Court

For the Northern District of California

1   *Brazil*, 2008 WL 4912050, at *5. This Court agrees with *Brazil* – some differences between

2   the claims of class representatives and the claims of class members should not result in a

3   successful standing challenge. This case does not involve some differences, at least as

4   Plaintiffs have presented it. Here the only apparent similarity between class representatives

5   and class members who purchased CPP is that both groups came to be enrolled in CPP. The

6   fact that Bank of America allegedly responded to Arevalo and Sandow by arguing that they

7   voluntarily enrolled in CPP does not, without more, tie their claims to those of absent class

8   members who decided to enroll in CPP and tried to use it. While a better explanation of the

9   connection between the two kinds of claims might have produced another result, the Court

10  concludes that Arevalo and Sandow do not have standing to assert claims relating to the

11  purchase and attempted use of CPP. Accordingly, Bank of America's motion to dismiss all

12  claims relating to voluntary enrollment in CPP is GRANTED. These claims are DISMISSED

13  WITHOUT PREJUDICE.

14

15  **II. Whether Bank of America is a Proper Defendant**

16      Bank of America argues that Plaintiffs' FAC should be dismissed in its entirety

17  because FIA Card Services, N.A. ("FIA"), not Bank of America, is the proper defendant in

18  this case. Bank of America produced documents to show that FIA, not Bank of America,

19  issued Plaintiffs credit cards and sold them CPP. FIA is a wholly-owned subsidiary of Bank

20  of America. *Thomas v. Bank of America Corp.*, 570 F.3d 1280, 1281 (11th Cir. 2009). FIA

21  uses Bank of America's logo, but Bank of America argues that this "does not implicate the

22  specific entity named here – Bank of America Corporation." Reply at 13:24-25.

23      Plaintiffs disagree. They point to several facts alleged in the FAC linking Bank of

24  America to the CPP program: (1) a customer advocate from Bank of America – not FIA –

25  sent Sandow a letter regarding his enrollment in CPP, FAC ¶ 48; (2) Sandow's credit card

26  agreement contains the phrase "©2007 Bank of America Corporation," Moloney Decl. Ex A

27  at 39; (3) Plaintiffs' credit card statements containing CPP charges make no mention of FIA,

28  see FAC ¶¶ 38, 45; and (4) Bank of America advertised CPP on its website, *id.* at ¶¶ 4, 15.

United States District Court

For the Northern District of California

1   Plaintiffs argue that these facts demonstrate Bank of America's direct involvement in the

2   CPP scheme. They also argue that these facts raise legal questions as to whether FIA's

3   conduct should be imputed to Bank of America. Bank of America cites no authority in

4   response to these arguments, and the Court is not persuaded, based upon the pleadings, that

5   Plaintiffs claims against Bank of America are not facially plausible.

6

7   **III. Breach of Contract**

8        The elements of a breach of contract claim are (1) the existence of a contract; (2)

9   plaintiff's performance or excuse for non-performance; (3) defendant's breach; and (4)

10  resulting damages. *Careau & Co. v. Sec. Pacific Bus. Credit, Inc.*, 222 Cal. App. 3d 1371,

11  1388, 272 Cal.Rptr. 387 (1990). Bank of America argues that the FAC is devoid of facts

12  alleging a breach of contract claim stemming from Plaintiffs' involuntary enrollment in CPP.

13  In their opposition, Arevalo and Sandow contend that their involuntary enrollment in CPP

14  violated their credit card contracts with Bank of America. That may be, but the FAC does not

15  put Bank of America on notice that Plaintiffs allege breaches of their credit card contracts.

16  While the FAC's introductory sections raise an inference that agreements governed Arevalo

17  and Sandow's credit cards, the breach of contract section of the FAC refers only to "the sales

18  contract," noting that "Plaintiffs and other Class members have fulfilled their obligation

19  under the sales contract by paying Credit Protection premiums." FAC ¶70. No other contract

20  is mentioned in the breach of contract section, and earlier indirect references to Bank of

21  America credit cards are not enough to put Bank of America on notice that Plaintiffs allege

22  that Bank of America breached credit card contracts when it enrolled Plaintiffs in CPP

23  without their consent.[2]

24

25

26      [2] At oral argument, Plaintiffs cited case law in support of their argument that a breach of contract claim is stated where it is obvious from the terms of the contract that a party to

27  the contract cannot charge fees for services not contemplated in the contract. The Court need not evaluate these arguments because Plaintiffs did not plead a breach of the credit card

28  contract.

At oral argument, Plaintiffs argued that Arevalo and Sandow had also adequately pleaded claims for breach of the CPP contract. Plaintiffs note that "[e]quitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (quotation omitted).[3] They contend that because Bank of America refused to refund Plaintiffs' money by stating that Plaintiffs had entered into a CPP contract, Bank of America cannot now argue that it did not enter CPP contracts with Plaintiffs. Bank of America is not arguing that it did not enter CPP contracts with Plaintiffs, however. Plaintiffs are. Furthermore, even if the Court were to assume that Plaintiffs entered CPP contracts, Plaintiffs fail to plead facts showing that Bank of America breached those contracts. In other words, Plaintiffs have not explained which contractual burdens Bank of America is attempting to avoid.

Plaintiffs also cite *Scripps Health v. Blue Cross & Blue Shield of Kan., Inc.*, No. 10-cv-2028 DMS, 2011 WL 292142 (S.D. Cal. Jan. 26, 2011), for the rule that entities can be held to the terms of a contract even if they are not parties to the contract. Again, Arevalo and Sandow have failed to allege facts that would constitute a breach of CPP contract terms with respect to involuntarily enrolled customers.

In a footnote to their opposition, Plaintiffs argue that their breach of contract claim should be converted into a suit for rescission. As Bank of America points out, "[i]t is axiomatic that a complaint may not be amended by briefs in opposition to a motion to dismiss." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1145 (N.D. Cal. 2010). Plaintiffs cite no authority to the contrary. Accordingly, Bank of America's motion to dismiss Plaintiffs' breach of contract claim is GRANTED, and the claim is DISMISSED WITHOUT PREJUDICE.

---

[3] This is one of several cases mentioned by Plaintiffs at oral argument for which no citation was given. The Court believes it has located the correct cases, but if it has not, the Court considers the cases abandoned because they were not cited in Plaintiffs' brief. *See Collins v. City of San Diego*, 841 F.2d 337, 339 (9th Cir. 1988).

**IV. Breach of the Covenant of Good Faith and Fair Dealing**

The covenant of good faith and fair dealing "is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Racine & Laramie, Ltd., Inc. v. Dep't of Parks and Recreation*, 11 Cal. App. 4th 1026, 1031, 14 Cal.Rptr.2d 335 (1992); *see also Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1129 (N.D. Cal. 2009) ("To establish a breach of an implied covenant of good faith and fair dealing, a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from the contract."). Plaintiffs argue that they have alleged breaches of the covenant implied in two kinds of contracts – Plaintiffs' credit card contracts and their CPP contracts. However, Plaintiffs' second claim for breach of the covenant of good faith and fair dealing cannot be read to allege a breach of the covenant implied in Plaintiffs' credit card contracts. The FAC refers only to "the Credit Protection sales contract." FAC ¶¶ 76, 77, 78, 80. It makes no reference to Plaintiffs' credit card agreements, and Bank of America would not reasonably be on notice that Plaintiffs' claim for breach of the covenant alleges breaches relating to Plaintiffs' credit card contracts. Insofar as Plaintiffs allege breach of the implied covenant of CPP agreements, they fail to state facts indicating that Arevalo and Sandow's rights to the benefits of the CPP contract were frustrated. Therefore Bank of America's motion to dismiss is GRANTED as to Plaintiffs' second claim for breach of the implied covenant of good faith and fair dealing. The claim is DISMISSED WITHOUT PREJUDICE.

**V. Intentional Misrepresentation**

"The elements of intentional misrepresentation, or actual fraud, are: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage." *Anderson v. Deloitte & Touche*, 56 Cal. App. 4th 1468, 1474, 66 Cal.Rptr.2d 512 (1997) (citation and quotation omitted). State-law fraud claims are subject to

the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)"). *Patriot Scientific Corp. v. Korodi*, 504 F. Supp. 2d 952, 964-65 (S.D. Cal. 2007). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Plaintiffs' third cause of action for intentional misrepresentation refers only to facts relating to class members who actively purchased CCP. As it is written, the FAC does not put Bank of America on notice that Plaintiffs' intentional misrepresentation claim is based upon anything other than the advertising and marketing campaign that caused some putative class members to agree to enroll in CCP. The claim makes no mention of involuntarily enrolled CPP customers, complaining only of Bank of America's "advertisements and marketing representations," which "were material to the Class members in deciding to purchase the Credit Protection." FAC ¶¶ 83, 87. Claims of CPP purchasers are not before this Court, and Plaintiffs failure to allege intentional misrepresentation as it relates to involuntarily enrolled customers requires the Court to GRANT Bank of America's motion to dismiss Plaintiffs' third claim for intentional misrepresentation. This claim is DISMISSED WITHOUT PREJUDICE.

**VI. Plaintiffs' Claims Under the Consumer Legal Remedies Act**

California's Consumer Legal Remedies Act ("CLRA") outlaws various "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer . . . ." Cal. Civ. Code § 1770(a). Plaintiffs asserting a violation of the CLRA must show "not only that a defendant's conduct was deceptive but that the deception caused them harm." *McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174, 183, 105 Cal.Rptr.3d 704 (2010) (quoting *Mass. Mutual Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292, 119 Cal.Rptr.2d 190 (2002)). Plaintiffs must plead their CLRA claim with particularity pursuant to Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Defendants argue that Plaintiffs do not plead sufficient facts to state a CLRA claim,

2   and that Plaintiffs do not show that the facts they do plead constitute unlawful conduct under

3   the CLRA. The Court finds that Plaintiffs have adequately pleaded violations of the CLRA.

4    Plaintiffs have pleaded with particularity the facts surrounding Arevalo and Sandow's

5   involuntary enrollment in CPP. They allege that Arevalo, during a call to Bank of America in

6   January 2010 to activate cash advance checks, declined to enroll in CPP when offered by a

7   salesperson. They allege that both Arevalo and Sandow first learned of their enrollment in

8   CPP from their credit card statements – Arevalo in April 2010, and Sandow in August 2010 –

9   and that neither enrolled voluntarily. Both allege that the involuntary enrollment led to

10   charges on their credit card that have not been refunded. Plaintiffs clearly base their CLRA

11   claim upon Bank of America's alleged failure to disclose to Arevalo and Sandow that they

12   were being enrolled in CPP. Arevalo and Sandow suffered harm as a result of these

13   omissions – their credit cards were charged for months without their knowledge. These

14   allegations are "specific enough to give defendants notice of the particular misconduct . . . so

15   that they can defend against the charge and not just deny that they have done anything

16   wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citations and

17   quotations omitted). They have explained "the who, what, when, where, and how of the

18   misconduct charged." *Id.* (citations and quotations omitted). Plaintiffs allegations regarding

19   their involuntary enrollment therefore satisfy Rule 9(b).

20    Defendants correctly point out that Plaintiffs do not explain which provisions of the

21   CLRA were violated by the alleged involuntary enrollments. However, the FAC does cite

22   specific CLRA provisions. While many of these provisions seem to accompany allegations

23   unrelated to customers' involuntarily enrollment in CPP, at least one of the provisions is

24   clearly cited with Arevalo and Sandow in mind. Plaintiffs allege that their involuntary

25   enrollment in CPP inserted an unconstitutional provision in Arevalo and Sandow's credit

26

27

28

14

United States District Court

For the Northern District of California

1   card agreements in violation of section 1770 (a)(19) of the CLRA.[4] Cal. Civ. Code §

2   1770(a)(19). Bank of America does not analyze the allegations under section 1770(a)(19) in

3   its motion or reply, and it therefore fails to persuade the Court that Plaintiffs' CLRA claim

4   should be dismissed for failure to state a claim. Accordingly, Bank of America's motion to

5   dismiss Plaintiffs CLRA claim for failure to state a claim is DENIED.

6

7   **VII. Plaintiffs' Claims Under California's Unfair Competition Law**

8           Plaintiffs bring their fifth cause of action under California's Unfair Competition Law

9   ("UCL"). Cal. Bus. & Prof. Code § 17200. The UCL characterizes "any unlawful, unfair or

10  fraudulent business act or practice" as "unfair competition." *Id.* The statute's coverage is

11  "sweeping, embracing 'anything that can properly be called a business practice and that at

12  the same time is forbidden by law.'" *Rubin v. Green*, 4 Cal. 4th 1187, 1200, 17 Cal. Rptr. 2d

13  828, 847 P.2d 1044 (1993) (quoting *Barquis v. Merchants Collection Ass'n*, 7 Cal. 3d 94,

14  113, 101 Cal. Rptr. 745, 496 P.2d 817 (1972)). The UCL allows civil actions for injunctions

15  to be brought by any "person who has suffered injury in fact and has lost money or property

16  as a result of the unfair competition," Cal. Bus. & Prof. Code § 17204, against "[a]ny person

17  who engages, has engaged, or proposes to engage in unfair competition," *id.* at section

18  17203.

19          Since the UCL is "written in the disjunctive," it "establishes three varieties of unfair

20  competition – acts or practice which are unlawful, or unfair, or fraudulent." *Podolsky v. First

21  Healthcare Corp.*, 50 Cal. App. 4th 632, 647, 58 Cal. Rptr. 2d 89 (1996). Plaintiffs bring a

22  single claim, referring to each of these prongs. They claim that their involuntary enrollment

23  in CPP was an unlawful, unfair, and fraudulent act or practice under the UCL. In its motion

24

25  _____

26          [4] Even though *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1255,
    99 Cal.Rptr.3d 768 (2009), analyzes an Unfair Competition Law claim rather than a CLRA

27  claim, the logic of that case persuades the Court that it need not decide whether the facts
    pleaded by Plaintiffs violate any other provision of the CLRA because Plaintiffs have stated

28  a claim under section 1770(a)(19).

United States District Court

For the Northern District of California

1   to dismiss, Bank of America argues that Plaintiffs do not have standing to assert UCL claims,

2   and that they have not properly pleaded any prong of the UCL.

3        In reply, Bank of America abandons its UCL standing arguments. Its motion papers

4   correctly point out that a plaintiff has standing to bring a UCL claim if he or she "has

5   suffered injury in fact and has lost money or property as a result of the unfair competition."

6   Cal. Bus. & Prof. Code § 17204. In opposition, Plaintiffs argue that both Arevalo and

7   Sandow allege that they have lost more than $700 each. They argue that their losses

8   constitute injuries in fact and economic injuries caused by involuntary enrollment. In its

9   reply papers, Bank of America does not disagree. Nor does the Court, see *Kwikset Corp. v.*

10  *Superior Court of Orange Cnty.*, 51 Cal.4th 310, 751 (2011), and Bank of America's failure

11  to challenge Plaintiffs' UCL standing arguments is interpreted as a concession that Plaintiffs

12  have standing under the UCL.

13       Plaintiffs' UCL claim also withstands Bank of America's arguments that they have

14  not stated a claim under the statute. Plaintiffs state a claim under the unlawful prong of the

15  UCL. "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations

16  of other laws and treats them as unlawful practices that the unfair competition law makes

17  independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tele. Co.*, 20 Cal. 4th

18  163, 180, 83 Cal. Rptr. 2d 548, 973 P.2d 527 (1999) (internal citations and quotation marks

19  omitted). "Violations of federal as well as state and local law may serve as the predicate for

20  an unlawful practice claim under" section 17200. *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661,

21  676, 94 Cal. Rptr. 3d 685, 208 P.3d 623 (2009). Plaintiffs contend that Bank of America's

22  unlawful practices constitute fraud, intentional misrepresentation, negligent

23  misrepresentation, unjust enrichment, and violation of the CLRA. Because Plaintiffs have

24  stated a claim under the CLRA based upon their involuntary enrollment in CPP, the Court

25  need not analyze the sufficiency of other bases for allegedly unlawful conduct. Plaintiffs'

26  CLRA claim is an adequate basis for pleading liability under the unlawful prong of the UCL.

27       In its reply papers, Bank of America does not disagree. Instead, it argues that

28  Plaintiffs have not adequately pleaded claims under the unfair and fraudulent prongs of the

UCL. However, the Court need not and does not consider whether Plaintiffs could state a claim under these prongs of the UCL. *See, e.g., Morgan*, 177 Cal. App. 4th at 1255 (explaining that, in considering a demurrer, "we need not, and do not, decide whether the conduct alleged meets any of the definitions of 'unfair' (or whether it meets the definition of 'unlawful') because we find that plaintiffs have alleged a fraudulent business practice under the UCL"). Plaintiffs state a claim under the unlawful prong of the UCL, and Bank of America's motion to dismiss Plaintiffs' fifth cause of action for failure to state a claim is therefore DENIED.

**VIII. False Advertising**

Plaintiffs bring their sixth cause of action for false advertising under section 17500 of the California Business and Professions Code, also known as California's False Advertising Law ("FAL"). This statute "makes it unlawful for a business to disseminate any statement 'which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . .'" *Ariz. Cartridge Remanufacturers Ass'n, Inc. v. Lexmark Intern., Inc.*, 421 F.3d 981, 985 (9th Cir. 2005) (quoting the FAL). "The law encompasses not just false statements but those statements 'which may be accurate on some level, but will nonetheless tend to mislead or deceive. . . . A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable" under the FAL. *Id.* (quoting *Day v. AT & T Corp.*, 63 Cal.App.4th 325, 74 Cal.Rptr.2d 55, 60 (1998)). The FAL carries the same standing requirements as the UCL – plaintiffs must have suffered injury in fact and lost money or property as a result of the FAL violation. *Morgan*, 177 Cal. App. 4th at 1259 (quoting Cal. Bus. & Prof. Code § 17535). Bank of America argues that Plaintiffs do not have standing to bring their FAL claim, and that even if they do have standing, they have not stated a claim of false advertising.

Having already determined that Plaintiffs have suffered injury in fact and have lost some money or property as a result of being involuntarily enrolled in CPP, the Court turns to

17

United States District Court

For the Northern District of California

whether Plaintiffs have alleged a FAL violation, and whether their loss of money happened as a result of that violation. In the FAC, Plaintiffs allege that Bank of America "conceal[ed] the manner in which customers were enrolled in Credit Protection without their permission . . . ."  Bank of America challenges the substance of Plaintiffs' FAL claim by arguing that the conduct challenged under the FAL (1) is not pleaded with particularity; and (2) is insufficiently pleaded insofar as Plaintiffs fail to allege that Bank of America intended to induce Plaintiffs' reliance. Bank of America's first argument fails because the FAC clearly challenges Bank of America's failure to tell Plaintiffs that they were being enrolled in CPP. Both Arevalo and Sandow describe contact with Bank of America, and explain that Bank of America omitted from these conversations and communications details about Arevalo and Sandow's enrollment in CPP. Furthermore, to the extent that Bank of America implies that FAL claims cannot rest upon omissions, it presents no authority suggesting that the failure to disclose information is not actionable under the FAL. As to Bank of America's second argument regarding Plaintiffs' failure to plead Bank of America's intent, the Court finds that this is not fatal to Plaintiffs' FAL claim. Plaintiffs cite to the FAL in the FAC, and the language of the FAL includes the element of intent. Intent need not be pleaded with particularity under Rule 9(b), and reading the FAC in the light most favorable to Plaintiffs, the Court finds that the FAC adequately pleads the intent element of Plaintiffs' FAL claim.

The Court also finds that the conduct challenged by Plaintiffs as violating the FAL caused the injury they allege – the loss of more than $700. Accordingly, Bank of America's motion to dismiss Plaintiffs' FAL claim for failure to state a claim is DENIED.

## IX. Preemption of Plaintiffs' CLRA, UCL, and FAL Claims

Bank of America argues that even if they are adequately pleaded, Plaintiffs' fourth, fifth, and sixth claims for relief under the CLRA, UCL, and FAL are preempted by the National Bank Act ("NBA"), 12 U.S.C. § 1 *et seq*. The parties do not address whether Bank of America is a national bank created and operated under the NBA, but Bank of America

United States District Court

For the Northern District of California

argues that the NBA applies to the transactions here because FIA is a national bank under the statute. Plaintiffs do not disagree.

"[The NBA] vests national banks . . . with authority to exercise 'all such incidental powers as shall be necessary to carry on the business of banking.'" *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 554-55 (9th Cir. 2010) (quoting 12 U.S.C. § 24 (Seventh)). "[T]he usual presumption against federal preemption of state law is inapplicable to federal banking regulation." *Wells Fargo Bank, N.A. v. Boutris*, 419 F.3d 949, 956 (9th Cir. 2005).

> As the agency charged with administering the Act, the Office of the Comptroller of the Currency ("OCC") has the primary responsibility for the surveillance of the "business of banking" authorized by the Act. *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 256, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995). To carry out this responsibility, the OCC has the power to promulgate regulations and to use its rulemaking authority to define the "incidental powers" of national banks beyond those specifically enumerated in the statute. *See* 12 U.S.C. § 93a (authorizing the OCC "to prescribe rules and regulations to carry out the responsibilities of the office"); *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 312 (2d Cir.2005). OCC regulations possess the same preemptive effect as the Act itself.

*Martinez*, 598 F.3d at 555.

The three circumstances in which state law can be preempted under the Supremacy Clause, U.S. Const. art. VI, cl. 2, by federal law, are:

> (1) express preemption, where Congress explicitly defines the extent to which its enactments preempt state law; (2) field preemption, where state law attempts to regulate conduct in a field that Congress intended the federal law exclusively to occupy; and (3) conflict preemption, where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress.

*Indus. Truck Ass'n, Inc. v. Henry*, 125 F.3d 1305, 1309 (9th Cir. 1997). Bank of America argues that the aforementioned consumer protection statutes are preempted under all three categories.

The Supreme Court has stated that "[f]ederally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1,

United States District Court

For the Northern District of California

11, 127 S.Ct. 1559, 167 L.Ed.2d 389 (2007); *see also Cuomo v. Clearing House Ass'n*, --

U.S. ----, 129 S. Ct. 2710, 2718-21, 174 L.Ed.2d 464 (2009) ("noting that banking regulation

is a "mixed state/federal regime[] in which the Federal Government exercises general

oversight while leaving state substantive law in place"). "States are permitted to regulate the

activities of national banks where doing so does not prevent or significantly interfere with the

national bank's or the national bank regulator's exercise of its powers."[5] *Watters*, 550 U.S. at

12. Courts have grappled with whether, in light of *Watters*, OCC regulations can preempt

state consumer protection laws in all three ways – through express, field, and conflict

preemption. Some courts have held that the NBA does not expressly preempt state consumer

protection laws. *See, e.g., Agustin v. PNC Fin. Serv. Grp.*, 707 F. Supp. 2d 1080, 1094 (D.

Haw. 2010) ("[T]he NBA does not expressly preempt generally applicable laws regarding

unfair business practices . . . ."); *Munoz v. Fin. Freedom Senior Funding Corp.*, 567 F. Supp.

2d 1156, 1162 n.4 (C.D. Cal. 2008) ("The NBA . . . is structured in such a way as to only

implicate conflict preemption."). Others have held that the NBA does not preempt the field of

banking regulation. *Martinez v. Wells Fargo Bank, N.A.*, No. C06-03327 RMW, 2007 WL

2213216, at *5 (N.D. Cal. July 31, 2007); *see also Smith v. BAC Home Loans Servicing, LP*,

--- F. Supp. 2d ---- , 2011 WL 843937, at *4 (S.D. W.Va. Mar. 11, 2011) (citing *Watters* and

stating that "Congress and the OCC never intended to occupy the entire field of national

banking regulation"); *McCormick v. Wells Fargo Bank*, No. 3:08-0944, 2009 WL 151588, at

*2 (S.D. W.Va. Jan. 22, 2009) ("[I]t is clear there is no field preemption of national bank

regulation."). The Court agrees that the NBA, and the regulations promulgated thereunder,

cannot be said to occupy the field of banking law to the exclusion of all state regulation if, as

the Supreme Court stated in *Watters*, "States are permitted to regulate the activities of

---

[5] Similar language appears in the recently enacted Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), codified in relevant part at 12 U.S.C. section 25b. Dodd-Frank provides that "State consumer financial laws are preempted, only if . . . the State consumer financial law prevents or significantly interferes with the exercise by the national bank of its powers." 12 U.S.C. § 25b(b)(1). Defendants argue that this language is irrelevant to the Court's preemption analysis. In light of the fact that nearly identical language appears in *Watters*, and *Watters* controls this case, the Court need not determine the significance of this provision Dodd-Frank.

national banks . . . ." *Watters*, 550 U.S. at 12. While other courts have held otherwise, *Rose v. Bank of Am. Corp.*, No. CV 10-5067- VBF (C.D. Cal. Nov. 5, 2010) (tentative order); *Spinelli*, 265 F.R.D. at 605, this Court is persuaded that neither the NBA nor OCC regulations occupy the field of national banking regulation.

The Court is less sure as to whether OCC regulations may expressly preempt state consumer protection laws. However, assuming that express preemption still applies, the state laws at issue here are not expressly preempted.

**A. Express Preemption**

The parties agree that CPP is a debt cancellation contract ("DCC") under the OCC regulations. *See* 12 C.F.R. § 37.2(f). The OCC regulations expressly state that DCCs "are governed by this part and applicable Federal law and regulations, and not . . . by State law." 12 C.F.R. § 37.1(c). Bank of America argues that this regulation expressly preempts Plaintiffs' claims under California's consumer protection statutes such as the CLRA, UCL, and FAL. Bank of America also argues that various provisions that do not reference state law nonetheless expressly preempt the state laws at issue here. Because express preemption requires a federal law or regulation to "define[] the extent to which its enactments preempt state law," the latter provisions are not properly analyzed under express preemption. They will be analyzed under conflict preemption.

While other courts have held otherwise, this Court is not persuaded that the OCC regulation quoted above expressly preempts the state laws at issue here. "The NBA itself sets out procedures the OCC must follow to issue a rule concluding that 'federal law preempts the application to a national bank of any State law regarding . . . consumer protection . . . .'" *Jefferson v. Chase Home Fin.*, No. C. 06-6510 TEH, 2008 WL 1883484, at *8 (N.D. Cal. Apr. 29, 2008) (citing 12 U.S.C. § 43(a)). The OCC must (1) "publish in the Federal Register notice of the preemption or discrimination issue that the agency is considering (including a description of each State law at issue)," 12 U.S.C. § 43(a)(1); (2) "give interested parties not less than 30 days in which to submit written comments," *id.* at 43(a)(2); and (3) "consider

any comments received," *id.* at 43(a)(3). Bank of America has not argued that the OCC followed these procedures, nor has it produced any authority suggesting it did so. The authorities cited by Bank of America in which district courts have found that the OCC's DCC regulations expressly preempt state consumer protection laws do not analyze whether the OCC followed this procedure. *Rose*, No. CV 10-5067- VBF, at 5; *Spinelli*, 265 F.R.D. at 605. Thus while the OCC regulations might well expressly preempt some state laws, Bank of America has failed to show that they preempt state consumer protection laws such as the CLRA, UCL, and FAL.

**B. Conflict Preemption**

Bank of America argues that Plaintiffs' CLRA, UCL, and FAL claims are preempted by OCC regulations. State laws conflict with federal law where

> "compliance with both federal and state regulations is a physical impossibility," *Florida Lime and Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941).

*Bank of America*, 309 F.3d at 558. Where a court aims to determine whether generally applicable state laws conflict with federal law, "the Court's focus is essentially on the law 'as applied.'" *Davis v. Chase Bank, USA, N.A.*, 650 F. Supp. 2d 1073, 1081 (C.D. Cal. 2009). "The proper inquiry is whether the 'legal duty that is the predicate of' Plaintiffs' state law claim falls within the preemptive power of the NBA or regulations promulgated thereunder." *Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1038 (9th Cir. 2008) (quoting *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 524, 112 S. Ct. 2608, 120 L.Ed.2d 407 (1992)).

Plaintiffs' CLRA, UCL, and FAL claims challenge two actions on the part of Bank of America: (1) involuntarily enrolling Arevalo and Sandow in CPP; and (2) misleading Arevalo and Sandow regarding their involuntary enrollment. Bank of America fails to persuade the Court that the OCC regulations governing DCCs create duties that conflict with

United States District Court

For the Northern District of California

the duties at issue in Plaintiffs' CLRA, UCL, and FAL claims.[6] Bank of America cites 12 C.F.R. section 37.7, which "requires a customer's written affirmative election to purchase" a DCC unless the customer voluntarily decides to enroll in a DCC over the phone. As Bank of America argues, "[t]hese OCC regulations govern how national banks must record a customer's voluntary decision to enroll in a DCC." Mot. at 10:20-21. The regulation does not govern how national banks must handle involuntary enrollments. The regulation, therefore, does not conflict with Plaintiffs' consumer protection claims.

Bank of America also argues that 12 C.F.R. section 37.4, which governs the provision of refunds to DCC customers, conflicts with Plaintiffs' claims that Bank of America failed to provide them refunds in violation of the CLRA, UCL, and FAL. Insofar as Plaintiffs' claims are premised upon the failure of Bank of America to refund Arevalo and Sandow's money, section 37.4 does not conflict with them. Section 37.4 governs the refund of fees "paid for the contract." 12 C.F.R. § 37.4(a). Arevalo and Sandow's claims are premised upon the fact that their CPP payments were not governed by an agreement. Therefore section 37.4 would not conflict with Plaintiffs' claims relating to refunds.

Bank of America argues that two other OCC regulations – 12 C.F.R. section 37.6(c) ("section 37.6(c)") and 12 C.F.R. Part 37, App. B ("Appendix B") – conflict with Plaintiffs' consumer protection claims. Section 37.6(c) governs the disclosures that sellers of DCCs must make to customers, and Appendix B governs eligibility requirements. The claims of class members challenging CPP disclosures and eligibility requirements are not before this Court.

In light of the Court's conclusion that Plaintiffs' consumer protection claims are not preempted, Bank of America's motion to dismiss these claims on preemption grounds is DENIED.

---

[6] In its reply papers, Bank of America states that it does not argue that the OCC regulations conflict with Plaintiffs' claims regarding their involuntary enrollment. However, in its motion, Bank of America appears to argue that these claims are expressly preempted because they conflict with OCC regulations. Therefore the Court analyzes here whether the OCC regulations conflict with Plaintiffs' involuntary enrollment claims.

United States District Court

For the Northern District of California

**X. Unjust Enrichment**

Bank of America challenges Plaintiffs' claim for unjust enrichment by arguing that unjust enrichment is not a proper cause of action under California law. California courts appear to agree. "[T]here is no cause of action in California for unjust enrichment." *Melchior v. New Line Prod., Inc.*, 106 Cal.App.4th 779, 793, 131 Cal.Rptr.2d 347 (2003). "The phrase 'unjust enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so." *Id.* (quoting *Lauriedale Assoc., Ltd. v. Wilson*, 7 Cal.App.4th 1439, 1448, 9 Cal.Rptr.2d 774 (1992)). Even so, some courts have considered allowing claims for unjust enrichment, "particularly where their claim seeks restitution where other remedies are inadequate." *Baggett v. Hewlett Packard, Co.*, 582 F. Supp. 2d 1261, 1270 (C.D. Cal. 2007) (citing *Ghirardo v. Antonioli*, 14 Cal.4th 39, 50, 57 Cal.Rptr.2d 687, 924 P.2d 996 (1996)); *see also Dorr v. Yahoo! Inc.*, No. C07-01428 MJJ, 2007 U.S. Dist. LEXIS 59126, at *6 (N.D. Cal. 2007) (construing a claim for unjust enrichment as a claim for restitution where plaintiff argued that the claim was mislabeled). Plaintiffs cite *Baggett*, where the court determined that because the plaintiff's other claims sought restitution as a remedy, the unjust enrichment claim added nothing to the relief available to him. *Id.* at 1271. The court dismissed plaintiff's unjust enrichment claim without leave to amend. The Court finds the reasoning in *Baggett* to be persuasive. Here Plaintiffs' claims under the CLRA, UCL, and FAL seek restitution as a remedy. Accordingly, Bank of America's motion to dismiss Plaintiffs' unjust enrichment claim is GRANTED. As in *Baggett*, Plaintiffs' claim for unjust enrichment is DISMISSED WITH PREJUDICE.

**XI. Motion to Strike**

In support of its motion to strike, Bank of America merely argues that "to the extent that the Court determines that some portion of a claim does not state a claim," the Court should strike it pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Mot. 21: 3-6. Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). As

United States District Court

For the Northern District of California

1   Plaintiffs point out, Bank of America offers no authority in favor of automatically striking

2   portions of pleadings dismissed on a motion to dismiss, and no argument as to why any of

3   Plaintiffs' pleadings should be stricken. Accordingly, Bank of America's motion to strike is

4   DENIED.

5

6   **CONCLUSION**

7       For the reasons set forth above, Bank of America's motion to dismiss is GRANTED

8   IN PART and DENIED IN PART. It is GRANTED with respect to all claims arising from

9   class members' voluntary enrollment in CPP. It is also GRANTED as to Plaintiffs' first,

10  second, and third claims arising from Plaintiffs' involuntary enrollment in CPP, and those

11  claims are DISMISSED with leave to amend. Bank of America's motion is GRANTED as to

12  Plaintiffs' seventh claim arising from involuntary enrollment, and that claim is DISMISSED

13  without leave to amend. It is DENIED as to Plaintiffs fourth, fifth, and sixth claims relating

14  to involuntary enrollment, and Bank of America's motion to strike is DENIED. Plaintiffs'

15  amended complaint, should they choose to amend, shall be filed no later than April 29, 2011.

16

17  **IT IS SO ORDERED.**

18

19  Dated: 3/29/11

20                                                  THELTON E. HENDERSON, JUDGE
                                                    UNITED STATES DISTRICT COURT

21

22

23

24

25

26

27

28